IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 19-cv-3607-WJM-STV

GODIN & BAITY, LLC, and
STEPHEN J. BAITY,

    Plaintiffs,

v.

MARKEL INSURANCE COMPANY, INC.,

    Defendant.

---

**ORDER DENYING AS MOOT PLAINTIFFS' OPPOSED MOTION TO STAY RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT UNTIL DISCOVERY IS COMPLETED, AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

    This breach of contract dispute regarding an insurer's duty to defend is before the Court on Plaintiffs Godin & Baity, LLC and Stephen J. Baity's (jointly, "Plaintiffs") Opposed Motion to Stay Ruling on Markel Insurance Company's Motion for Summary Judgment Until Discovery Is Completed ("Motion to Stay") (ECF No. 32), and Defendant Markel Insurance Company, Inc.'s Motion for Summary Judgment ("Motion") (ECF No. 13).  For the reasons explained below, the Motion to Stay is denied as moot, and the Motion is granted.

## I.  LEGAL STANDARD

    Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II. PROCEDURAL MATTERS

The undersigned's WJM Revised Practice Standards impose the following requirement on a summary judgment movant:

> All motions for summary judgment . . . must contain a section entitled "Movant's Statement of Material Facts." This Statement shall set forth in simple, declarative sentences, all of which are separately numbered and paragraphed, each material fact the movant believes supports movant's claim that movant is entitled to judgment as a matter of law. Each statement of fact must be accompanied by a specific reference to supporting evidence in the record.

WJM Revised Practice Standards III.E.3. Accordingly, Defendant filed a Separate Statement of Facts as an exhibit to the Motion. (ECF No. 13-1.) The WJM Revised Practice Standards further clarify the following:

> Any party opposing the motion for summary judgment . . .
> shall provide a "Response to Movant's Material Facts" in its
> brief, admitting or denying the asserted material facts set
> forth by the movant . . .

WJM Revised Practice Standards III.E.4.  Plaintiffs did not include a Response to Movant's Material Facts in their response.  (*See* ECF No. 24.)  Given Plaintiffs' failure to comply with the WJM Revised Practice Standards, the facts in the Separate Statement of Facts (ECF No. 13-1) are deemed admitted.[1]

### III. BACKGROUND[2]

**A.**   ***McFadden* Lawsuit**

In 2016, Plaintiffs represented the defendants in *McFadden v. Meeker Housing Association*, Civil Action No.16-cv-2304-WJM-GPG (D. Colo.), a lawsuit concerning violations of the Rehabilitation Act of 1973, 29 U.S.C. §§ 794 *et seq.*, and the Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.*, in connection with the defendants' disability-assistance pets policy.  (ECF No. 24 at 2.)  In October 2017, the *McFadden* plaintiffs filed a Motion for Entry of Judgment and Dismissal Due to Defendants' Litigation Misconduct, accusing the defendants of failing to disclose pertinent documents and refusing to comply with their discovery obligations.  (*Id.*)  A forensic search of the defendants' computer revealed documents that had not been produced to the *McFadden* plaintiffs in discovery.  (*Id.* at 3.)  As a result, in the Order Denying Plaintiffs'

---

[1] This finding does not affect the Court's ruling, as Plaintiffs do not appear to contest any of the facts in Defendant's Separate Statement of Facts.

[2] The following factual summary is based on the parties' briefs on the Motion and documents submitted in support thereof.  These facts are undisputed unless attributed to a party or source.  All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

3

Motion for Default Judgment as a Sanction, *Sua Sponte* Granting Alternative Sanctions, and Order to Show Cause Why Stephen J. Baity Should Not Be Ordered to Pay Attorneys' Fees and Costs ("Order to Show Cause"), the undersigned stated:

> [T]he Court will consider whether Mr. Baity should be held personally responsible for Plaintiffs' attorneys' fees and costs related to the forensic imaging process, and incurred in connection with the Motion.  Because Mr. Baity was not warned ahead of time that this might be a possible outcome, the Court will not decide whether to award those fees and costs without first giving him an opportunity to be heard.  The Court will therefore order him to show cause why fees and costs should not be awarded against him as a sanction for his failure to take his discovery responsibilities seriously.

(ECF No. 13-3 at 13.)

On July 9, 2018, Plaintiffs tendered the Order to Show Cause to Defendant, seeking a defense under the Lawyers Professional Liability Insurance Policy, Policy No. LA306323 ("Policy"), which Defendant issued to Godin & Baity, LLC for the policy period April 26, 2018 to April 26, 2019.  (ECF No. 13-1 at 2; ECF No. 13-2.)  Defendant declined to provide a defense.  (ECF No. 13-1 at 2.)  Plaintiffs asked Defendant to reconsider, but Defendant again declined.  (*Id.*)  On November 19, 2018, Plaintiffs received a declination letter from Defendant explaining that "no duty to defend arises under the Policy under these circumstances."  (ECF No. 13-4.)  The undersigned discharged the Order to Show Cause on May 21, 2019 on grounds not material to the dispute in this action.  (ECF No. 24-1.)

**B.     Relevant Policy Language**

Section I.A of the Policy provides coverage

> on behalf of the **Insured** [for] all sums which the Insured shall become legally obligated to pay as **Damages** for **Claims** which are first made against the **Insured** during the **Policy Period** . . . , and which are reported to the Company in accordance with SECTION V - When to Report a Claim, arising out of any act, error, omission or **Personal Injury** in the rendering of or failure to render **Professional Services** by an **Insured** or any entity or individual for whom the **Named Insured** is legally liable. . . .

(ECF No. 13-2 at 19). The Policy's Named Insured is Godin & Baity, LLC. (*Id.* at 1.)

The Policy contains an Enhancement Endorsement, which provides the amended definition of "Damages":

> **E. Damages** means compensatory judgments, settlements, or awards, but does not include fines or penalties, sanctions, the return of fees or other consideration paid to the **Insured** . . .
>
> However, if a **Suit** is brought against an **Insured** with respect to a **Claim** falling within the scope of coverage afforded by this policy, and such **Suit** seeks both compensatory and multiplied damages, then the Company will afford a defense to such action without liability for payment of such multiplied damages.
>
> **Damages** includes punitive or exemplary damages . . . .

(*Id.* at 11 ¶ 3.)

Section VI of the Policy also contains certain exclusions. Section VI.A provides:

> This insurance does not apply to **Claims**:
>
> A. Arising out of an . . . error or omission . . . ; however, for such **Claims** otherwise covered by this policy, the Company will provide a defense until such time as the act, error, or omission is found to be illegal, dishonest, fraudulent, criminal, malicious, or was an intentional or knowing violation of the law by trial, court ruling, regulatory ruling or admission[.]

5

("Exclusion A") (*Id.* at 22.)  In addition, Section VI.G provides that the Policy does not apply to "**Claims** . . . seeking . . . payment of any form of legal fees, related fees, or any other costs, expenses, or charges[.]"  ("Exclusion G") (*Id.* at 22–23.)

## C.     This Lawsuit

On November 25, 2019, Plaintiffs sued Defendant in the District Court of Arapahoe County, Colorado, alleging that the Policy required Defendant to provide a defense against the Order to Show Cause, and Defendant breached the insurance contract by refusing to do so.  (ECF No. 4.)  Plaintiffs brought claims for breach of contract; violation of the Insurance Fair Conduct Act, Colo. Rev. Stat. §§ 10-3-1115–1116; and bad faith breach of insurance contract.  (*Id.*)  Defendant removed the case on December 20, 2019 pursuant to this Court's diversity jurisdiction, 28 U.S.C. § 1332, and answered the complaint.  (ECF No. 1; ECF No. 8.)

## IV. ANALYSIS

### A.     Motion to Stay

On April 3, 2020, Plaintiffs filed the Motion to Stay, requesting that the Court stay its ruling on the Motion until discovery is completed so they might "fully respond to the Defendant's [motion for summary judgment]."  (ECF No. 32.)  On April 8, 2020, Defendant responded in opposition, arguing that under Colorado and Tenth Circuit law, "an insured cannot rely on extrinsic evidence to show that a duty to defend exists."  (ECF No. 35 at 3.)  On April 13, 2020, the Court reserved ruling on the Motion to Stay and stated it would address it when considering the Motion.  (ECF No. 37.)

The Scheduling Order provides that the discovery period ended on August 7,

2020.[3]  (ECF No. 23 at 6.)  Although the discovery period has ended, Plaintiffs have not moved to supplement their response to the Motion with information obtained during discovery.  Regardless, the Court needs no additional briefing to rule on the Motion and finds the Motion to Stay moot.

**B.     Motion for Summary Judgment**

On February 6, 2020, Defendant moved for summary judgment (ECF No. 13), positing that the key issue for the Court is whether the Order to Show Cause constitutes a "Suit against the Insured seeking Damages to which this insurance applies."  (ECF No. 13 at 10; ECF No. 28 at 3.)  Defendant contends it does not.  Specifically, Defendant asserts it had no duty to defend Plaintiffs because the Policy's definition of Damages expressly excludes "sanctions;" Exclusion G excludes coverage for claims seeking payment of legal fees, related fees, or any other costs; and the Policy language is not ambiguous.  (ECF No. 13 at 10–12.)

On March 12, 2020, Plaintiffs responded in opposition, arguing Defendant owed them a defense because: the Policy is ambiguous, as it requires a defense for claims for compensatory, punitive, or exemplary damages but not sanctions; and the Policy created a reasonable expectation that Defendant would provide a defense until the Court ruled on the Order to Show Cause.  (ECF No. 24 at 5–6.)

Defendant replied, arguing that the Policy is not ambiguous and the reasonable expectations doctrine does not save Plaintiffs' claims.  (ECF No. 28.)

---

[3]  On May 1, 2020, the Magistrate Judge denied Defendant's motion to stay discovery (ECF No. 40), leaving the August 7, 2020 discovery deadline in place.

1.        Whether the Policy is Ambiguous

Defendant argues the Order to Show Cause expressly relates to the possible award of sanctions against Baity, and because the Policy's Enhancement Endorsement excludes sanctions from the definition of Damages, there is no duty to defend Plaintiffs in connection with the Order to Show Cause.  (ECF No. 13 at 10.)  According to Defendant, simply because the Policy does not define the term "sanctions" does not make it ambiguous.  (*Id.*)  *Black's Law Dictionary* defines a sanction as "a penalty or coercive measure that results from failure to comply with a law, rule or order."  (*Id.* (quoting *Black's Law Dictionary* (8th ed. 1999)).)  Defendant contends the title and the relevant portion of the Order to Show Cause directed at Baity both explicitly concern a possible award of sanctions as *Black's Law Dictionary* defines the term—as a penalty and nothing else.  (*Id.* at 10–11.)  To the extent the Order to Show Cause suggests that, rather than potential sanctions, the Court contemplated awarding compensatory damages to the *McFadden* plaintiffs for their attorneys' fees and costs associated with the forensic search, Defendant argues that fact is incidental and does not bring the claim within the definition of covered "compensatory" damages.  (*Id.* at 11.)  Similarly, Defendant argues to the extent the potential sanctions could be construed as covered punitive or exemplary damages meant to punish Plaintiffs for their lack of diligence during discovery in the *McFadden* litigation, the clear language in the Order to Show Cause shows the Court was considering the imposition of sanctions—not punitive or exemplary damages—which are excluded from coverage.  (ECF No. 28 at 4.)

Moreover, Defendant points to Exclusion G, which excludes coverage for claims

8

"[s]eeking . . . payment of any form of legal fees, related fees, or any other costs, expense or charges." (*Id.* at 7.) The Order to Show Cause explicitly considers "whether Mr. Baity should be held personally responsible for Plaintiffs' attorneys' fees and costs related to the forensic imaging process . . . ." (ECF No. 13-3 at 13.) As a result, Defendant argues the claim is not covered under either the definition of Damages or Exclusion G, and Defendant had no duty to defend Plaintiffs in connection with the Order to Show Cause.

In response, Plaintiffs argue the Court should broadly construe the allegations in the Order to Show Cause to include "Damages" as defined by the Policy, arguing the Order to Show Cause contemplated damages that could be considered compensatory, punitive, or exemplary. (ECF No. 24 at 10.) Because the term "sanctions" is not defined in the Policy, Plaintiffs contend the term is ambiguous.[4] (*Id.* at 12.) Plaintiffs also point out that the Policy does not define the terms "compensatory," "punitive," or "exemplary." (*Id.* at 11.)

Plaintiffs contend that because the Order to Show Cause raised the issue of Plaintiffs' perceived "lack of diligence" as grounds for awarding sanctions as a "punishment," the Court contemplated damages arising out of Plaintiffs' "errors or

---

[4] To the extent Plaintiffs also argue that "[t]he term 'sanctions' appears to be a remnant left behind when the punitive and exemplary damages were moved into the expanded definition of Damages covered by the Enhancement Endorsement," (ECF No. 24 at 13), their argument is speculative and therefore unavailing. In determining whether an insurer has a duty to defend the insured, Colorado courts follow the "four corners rule" or "complaint rule," under which the courts compare the allegations of the underlying complaint with the applicable policy terms. *See Dish Network Corp. v. Arch Specialty Ins. Co.*, 989 F. Supp. 2d 1137, 1144 (D. Colo. 2013). Therefore, the Court must interpret the "applicable policy terms" and not prior, inapplicable versions of the Policy.

9

omissions" or "punitive or exemplary damages," which are covered.  (*Id.* at 12–14.) Further, Plaintiffs argue the Order to Show Cause contemplated an award of covered compensatory damages where it stated that "[b]y an order awarding attorneys' fees and costs related to the forensic imagine process, and incurred in connection with the Motion, Plaintiffs' monetary prejudice could be cured."  (*Id.* at 14–16 (quoting ECF No. 13-3 at 12).)  Plaintiffs argue the Policy's coverage of claims for compensatory, punitive, or exemplary damages on one hand, and exclusion of coverage for sanctions on the other hand, constitutes "an inconsistency in the Policy which creates an ambiguity that must be construed against [Defendant] and in favor of Plaintiffs."  (ECF No. 24 at 14.)

Plaintiffs do not address Exclusion G, which excludes from coverage claims for legal fees and costs.

Under Colorado law,[5] courts construe insurance policies "using general principles of contract interpretation."  *Greystone Constr., Inc. v. Nat'l Fire & Marine Ins. Co.*, 661 F.3d 1272, 1283 (10th Cir. 2011).  Therefore, absent an ambiguity, a policy's language is construed according to its plain meaning.  *Id*.  However, in recognition of the unique relationship between insurer and insured, courts "construe ambiguous provisions against the insurer and in favor of providing coverage to the insured."  *Id*. at 1284 (citing

---

[5] Neither party objects to the application of Colorado law, or suggests that another state's law applies, to the interpretation of the Policy.  Federal courts sitting in diversity apply the forum state's choice of law principles.  *U.S. Aviation Underwriters, Inc. v. Pilatus Bus. Aircraft, Ltd.*, 582 F.3d 1131, 1143 (10th Cir. 2009).  Colorado choice-of-law rules provide that an insurance contract is governed "by the law of the state with the most significant relationship to the insurance contract."  *Berry & Murphy, P.C. v. Carolina Cas. Ins. Co.*, 586 F.3d 803, 808 (10th Cir. 2009).  Although neither party addresses this issue, the Policy was issued to a Colorado insured (Godin & Baity, LLC), and Baity is a Colorado resident.  (ECF No. 1 at 2; ECF No. 4 ¶¶ 1, 2; ECF No. 13-2.)  Colorado therefore has the most significant relationship to the Policy.  *See Berry & Murphy*, 586 F.3d at 808.

*Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003). Courts look to the policy as a whole to determine whether an ambiguity is present. *Cary v. United of Omaha Life Ins. Co.*, 108 P.3d 288, 290 (Colo. 2005). Disagreements regarding policy interpretation do not necessarily signal, or create, an ambiguity. *Id*. (citing *Union Ins. Co. v. Houtz*, 883 P.2d 1057, 1061 (Colo. 1994)). Rather, "[a]n insurance policy is ambiguous if it is susceptible on its face to more than one reasonable interpretation." *Id*. One may not read an ambiguity into a term where none exists in order then to resolve the resulting ambiguity against the insurer. *See Martinez v. Hawkeye-Security Ins. Co.*, 576 P.2d 1017, 1019 (Colo. 1978) ("[C]ourts will not force an ambiguity in order to resolve it against an insurer.").

To determine whether a provision is ambiguous, "the instrument's language must be examined and construed in harmony with the plain and generally accepted meaning of the words employed, and reference must be made to all the provisions of the agreement." *Radiology Prof'l Corp. v. Trinidad Area Health Ass'n*, 577 P.2d 748, 750 (Colo. 1978). Courts should avoid "strained constructions" in favor of "common constructions," and technical and legal definitions should also be avoided. *Dish Network*, 989 F. Supp. 2d at 1144. "In other words, the plain meaning of the words should be employed in a lay manner consistent with what would be understood by a person of ordinary intelligence." *Id.*

The Court agrees with Defendant that the Policy language is unambiguous and does not mandate that Defendant provide Plaintiffs a defense against the Order to Show Cause. To the extent Plaintiffs argue the Court should find that the Order to

Show Cause contemplated awarding damages that could be broadly construed to include compensatory, punitive, or exemplary damages as defined in the Policy (ECF No. 24 at 11), their argument is unavailing.  As explained below, Plaintiffs' interpretation of the Order to Show Cause attempts to create an ambiguity where none exists.

The Order to Show Cause expressly contemplated awarding "attorneys' fees and costs" as a "sanction" against Baity.  (ECF No. 13-3 at 13.)  Contrary to Plaintiffs' interpretation, the Order to Show Cause did not contemplate an award of compensatory, punitive, or exemplary damages.[6]  Simply because the Policy does not define "sanctions" does not render the term ambiguous.  *See Residences at Olde Town Square Ass'n v. Travelers Cas. Ins. Co. of Am.*, 430 F. Supp. 3d 743, 752 (D. Colo. 2019) (finding that where insurance policy did not define a particular term, "that does not mean its meaning is unclear or ambiguous").  Similarly, simply because the parties disagree about the meaning of "sanctions" does not create an ambiguity.  *See Parrish Chiropractic Ctrs, P.C. v. Progressive Cas. Ins. Co.*, 874 P.2d 1049, 1055 (Colo. 1994).  The Court gives the words of insurance contracts their plain meaning, avoiding strained and technical interpretations.  *See Progressive Specialty Ins. Co. v. Hartford Underwriters Ins. Co.,* 148 P.3d 470, 474 (Colo. App. 2006).  The definition of Damages

---

[6] The Court's statement in the Order to Show Cause that "Plaintiffs' monetary prejudice could be cured" does not support Plaintiffs' argument that an award of compensatory damages was contemplated.  (ECF No. 13-3 at 12.)  Further, the Court's statement that Baity must "show cause why he should not be held personally responsible for attorneys' fees and costs Plaintiffs would not have incurred but for his non-diligence" (*Id.* at 2) does not support Plaintiffs' argument that an award of punitive or exemplary damages was contemplated.  Plaintiffs' interpretation of these statements in relation to the Policy language is the type of "strained" interpretation courts avoid.  Rather, in the Order to Show Cause, the Court clearly contemplated "sanctions" against Baity and used that precise term to explain its intentions in ordering Baity to "show cause why fees and costs should not be awarded against him as a sanction . . . ."  (*Id.* at 13.)

in the Enhancement Endorsement excludes "sanctions." (ECF No. 13-2 at 11.) Exclusion G excludes coverage for "payment of any form of legal fees, related fees, or any other costs . . . ." (*Id.* at 23.) The Policy is clear: the sanctions—which were to take the form of attorneys' fees and costs—contemplated by the Order to Show Cause are excluded from coverage.

The Court must interpret the Policy "in its entirety with the end in view of seeking to harmonize and to give effect to all provisions so that none will be rendered meaningless." *Copper Mountain, Inc. v. Indus. Sys., Inc*., 208 P.3d 692, 697 (Colo. 2009) (quotation marks omitted). To accept Plaintiffs' reading of the Policy would impermissibly render the term "sanctions" meaningless because, as Defendant points out, "it is hard to think of a sanction that is neither punitive nor compensatory." (ECF No. 28 at 5.)

As a result, the Court finds the term "sanctions" is not ambiguous. Interpreted according to its plain, ordinary meaning, "sanctions," as used in the Order to Show Cause, are excluded by the Policy's definition of Damages and Exclusion G.

2. <u>Whether the Reasonable Expectations Doctrine Applies</u>

Plaintiffs argue the Policy created the reasonable expectation that Defendant would provide a defense until Plaintiffs' conduct or omissions were found to be sanctionable. (ECF No. 24 at 16.) For support, Plaintiffs cite two Policy provisions. (*Id.* at 18–19.) First, Exclusion A provides:

> This insurance does not apply to **Claims**:
>
> A. Arising out of an illegal, dishonest, fraudulent, criminal, knowingly wrongful, or malicious act, error or omission, or an intentional or knowing violation of the law . . . however, for

> such **Claims** otherwise covered by this policy, *the Company will provide a defense until such time as the act, error, or omission is found to be* illegal, dishonest, fraudulent, criminal, malicious, or was an *intentional or knowing violation of the law* by trial, *court ruling*, regulatory ruling or admission.

(ECF No. 13-2 at 22 (italics added).) Second, Plaintiffs rely on the Definitions section of the Enhancement Endorsement which provides:

> However, if a **Suit** is brought against an **Insured** with respect to a **Claim** falling within the scope of coverage afforded by this policy, and such **Suit** seeks both compensatory and multiplied damages, *then the Company will afford a defense to such action without liability for payment of such multiplied damages*.

(*Id.* at 11 (italics added).)

Plaintiffs contend the "reasonable expectation of an ordinary person would be that [the Policy] covered damages that could be considered compensatory, punitive or exemplary." (ECF No. 24 at 17.) They further argue that an ordinary person would reasonably expect Defendant to provide a defense until such time as the Court entered a "sanctions" award that did not include any element of compensatory, punitive, or exemplary damages. (*Id.*) Because the Court did not order sanctions but only contemplated doing so in the Order to Show Cause, Plaintiffs argue Defendant should have defended them under a reservation of rights until the Court ruled on the Order to Show Cause. (*Id.* at 16.)

The Colorado Supreme Court has summarized the reasonable expectations doctrine as follows:

> Given insurance policies' unique nature, which includes significant potential for insurers to take advantage of or

> mislead insureds, such policies are subject to heightened scrutiny, including the doctrine of reasonable expectations, which obligates insurers to clearly and adequately convey coverage-limiting provisions to insureds.  In Colorado, the reasonable expectations of insureds have succeeded over exclusionary policy language in two main situations:
> (1) where an ordinary, objectively reasonable person would, based on the language of the policy, fail to understand that he or she is not entitled to the coverage at issue; and
> (2) where, because of circumstances attributable to an insurer, an ordinary, objectively reasonable person would be deceived into believing that he or she is entitled to coverage, while the insurer would maintain otherwise.

*Bailey v. Lincoln Gen. Ins. Co.*, 255 P.3d 1039, 1048–49 (Colo. 2011).

Contrary to Plaintiffs' contention, neither of these situations is present here.[7] Plaintiffs' reading of the two aforementioned provisions is premised on the idea that their claim was covered until the Court ruled on the Order to Show Cause.  However, Exclusion A only provides a defense for "**Claims** otherwise covered by this policy," and the definition of Damages in the Enhancement Endorsement only provides a defense for "a **Claim** falling within the scope of coverage afforded by this policy."  As explained above, on its face, the claim for sanctions in the Order to Show Cause is excluded from coverage; Plaintiffs need not have waited for the Court to rule to obtain that understanding.

Section I.A of the Policy provides:

> The Company shall have the right and duty to defend any **Suit** against the **Insured** seeking **Damages** to which this insurance applies even if any of the allegations of the **Suit**

---

[7]Although Plaintiffs cite both parts of the reasonable expectations doctrine, they only ever invoke the first part, as they do not contend Defendant deceived them into believing they were entitled to coverage.  (*See* ECF No. 24 at 16–20.)  The Court therefore limits its analysis to the first part of the doctrine.

>are groundless, false or fraudulent.  However, the Company
>shall have no duty to defend the **Insured** against any **Suit**
>seeking **Damages** to which this insurance does not apply.

(ECF No. 13-2 at 19.)  When read in combination with the definition of Damages in the Enhancement Endorsement that excludes "sanctions" (*Id.* at 11) and Exclusion G, which states that the Policy does not apply to claims that seek "payment of any form of legal fees, related fees, or any other costs . . ." (ECF No. 13-2 at 23), an ordinary, objectively reasonable person would understand the Policy does not cover a defense against the Order to Show Cause.  It is a bridge too far to attribute Plaintiffs' interpretation—that the Order to Show Cause contemplated sanctions as compensatory, punitive, or exemplary damages—to the ordinary, objectively reasonable person.

Therefore, the Court finds the reasonable expectations doctrine does not apply, and Defendant did not owe Plaintiffs a duty to defend.[8]

## V.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Plaintiffs' Opposed Motion to Stay Ruling on Markel Insurance Company's Motion for Summary Judgment Until Discovery Is Completed (ECF No. 32) is DENIED AS MOOT;

2. Defendant's Motion for Summary Judgment (ECF No. 13) is GRANTED;

---

[8] To the extent Plaintiffs also argue Defendant had a duty to indemnify, the Court finds Defendant had no duty to indemnify Plaintiffs under the Policy.  *See Cyprus Amax Minerals,* 74 P.3d at 299 ("The duty to defend is broader than the duty to indemnify, and where no duty to defend exists, it follows there can be no duty to indemnify.").

16

3. Judgment shall enter in favor of Defendant, and Defendant shall have its costs, if any, upon compliance with D.C.COLO.LCivR 54.1; and

4. The Clerk shall terminate this action.

Dated this 27th day of August, 2020.

BY THE COURT:

_____
William J. Martínez
United States District Judge